Laura May Kimball DOAN, Plaintiff,

v.

CONSUMER TESTING LABORATO-
RIES, INC., Consumer Testing Labora-
tories Taiwan, and Gulf Underwriters
Insurance Company, Defendants.

Nos. CIV. 97–5079, CIV. 97–
5149 and CIV. 97–5184.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

April 9, 1998.

Samuel M. Reeves, Gocio & Dossey, Ben-
tonville, AR, John W. de Gravelles, de Gra-
velles, Palmintier & Holthaus, Baton Rouge,
LA, for Laura May Kimball Doan.

Kelly P. Carithers, Davis, Cox & Wright,
Fayetteville, AR, for Consumer Testing Lab-
oratories, Inc.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, District Judge.

This case is currently before the court on
the motion for summary judgment of the
separate defendant Gulf Underwriters Insur-
ance Company, and plaintiff's response
thereto. For the reasons set forth below, the
motion will be granted.

### I. BACKGROUND

For purposes of discussion, we will sum-
marize the allegations as they appear in the
complaint. On or about November 26, 1993,
plaintiff purchased a chair from Wal–Mart
Stores, Inc. ("Wal–Mart"), at its store in
Jennings, Louisiana. Plaintiff alleges that
she was injured when the chair fell over on
December 6, 1993.

Plaintiff alleges that the accident and re-
sulting injuries were the direct and proxi-

mate result of the negligence of, *inter alia,* Consumer Testing Laboratories, Inc. ("CTL"). CTL is incorporated and has its principal place of business in Massachusetts, and is also doing business in Bentonville, Arkansas.

The substance of plaintiff's complaint is that CTL was negligent in the following respects: (1) in failing to properly test and/or investigate this product prior to giving its approval to said product to be sold to the public by Wal–Mart; (2) in failing to properly instruct and/or warn regarding the use and/or possible dangers and/or risks associated with the use of this chair prior to giving its approval to said product; and (3) failing to act with the required degree of care commensurate with the existing situation. Plaintiff contends that Gulf Underwriters Insurance Company ("Gulf") is liable for the negligent acts of its insured, CTL.

The procedural background of this case is circuitous and lengthy, however, for purposes of discussion, the court will briefly review the history of this case. Plaintiff originally sued Wal–Mart Stores, Inc. ("Wal–Mart"), the seller of the allegedly defective chair, and Victory Land Entertainment Co., Ltd. ("Victory Land"), the manufacturer of the chair, and their respective insurers, in the United States District Court for the Western District of Louisiana, Lake Charles Division. *See, Laura May Kimball Doan v. Wal–Mart Stores, Inc., et al.,* No. 94–1602 (W.D. La. filed May 27, 1994). On October 31, 1995, CTL was named as a defendant in *Doan v. Wal–Mart.* In addition, plaintiff commenced this case against Gulf in the United States District Court for the Western District of Louisiana, Lake Charles Division. *See, Laura May Kimball Doan v. Gulf Underwriters Insurance Co.,* No. 96–2482 (W.D. La. filed October 23, 1996).

Plaintiff subsequently settled with Wal–Mart and Victory Land and they were dismissed from the lawsuit with prejudice. Thereafter, by memorandum opinion dated May 30, 1996, the district court in Louisiana found that it did not have personal jurisdiction over CTL, and thus, it dismissed CTL from the case, and the Fifth Circuit affirmed.

Prior to the dismissal in *Doan v. Wal–Mart,* plaintiff filed this lawsuit in the Western District of Arkansas on May 23, 1997, docketed as Civil No. 97–5079. A few days later, on May 28, 1997, plaintiff filed an identical lawsuit against CTL in the United States District Court Western District of Massachusetts.[1] On September 10, 1997, plaintiff moved the district court in Massachusetts to transfer the case to this court pursuant to 28 U.S.C. § 1404(a), and the motion was granted on the same day. Therefore, the Massachusetts case was ordered transferred to this district, and was docketed as Civil No. 97–5149.[2] On October 22, 1997, pursuant to Rule 42 of the Federal Rules of Civil Procedure, the court ordered the two cases consolidated.

On September 29, 1997, in light of the above cases pending in the Western District of Arkansas, plaintiff filed a motion in the district court in Louisiana to transfer *Doan v. Gulf,* the motion was granted, and the Gulf case was ordered transferred to this court. By court order dated January 20, 1998, the court consolidated all three cases.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds. *Holloway v. Lockhart,* 813 F.2d 874 (8th Cir.1987); Fed.R.Civ.P. 56.

---

1. Plaintiff originally named three companies in these lawsuits: Consumer Testing Laboratories, Inc.; Consumer Testing Laboratories (Far East) Ltd.; Consumer Testing Laboratories Taiwan. By this court's order dated March 31, 1998, Consumer Testing Laboratories (Far East) Ltd. was dismissed from this lawsuit for lack of personal jurisdiction. It appears from the record that plaintiff has not yet obtained service over Consumer Testing Laboratories Taiwan, a foreign corporation. Plaintiff is not required to effect service over Consumer Testing Laborato-

ries Taiwan within the time limits set out in Federal Rule of Civil Procedure Rule 4(m). Nevertheless, the court ordered plaintiff to inform the court of the status of service over this defendant by April 15, 1998.

2. Civil No. 97–5149 was originally assigned to the docket of Honorable Jimm Larry Hendren, however, in light of Civil No. 97–5079 pending in this court, Civil No. 97–5149 was reassigned to this court's docket.

The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied.

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). *See also AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987); *Niagara of Wisconsin Paper Corp. v. Paper Industry Union—Management Pension Fund,* 800 F.2d 742, 746 (8th Cir.1986).

The Eighth Circuit Court of Appeals has advised trial courts that summary judgments should be cautiously invoked so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. U.S.,* 600 F.2d 725, 727 (8th Cir.1979). In *Counts v. M.K.-Ferguson Co.,* 862 F.2d 1338 (8th Cir.1988), the court, reviewing the burdens of the respective parties, stated:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.,* "[to] point[ ] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.,* 862 F.2d at 1339, (*quoting, City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.,* 838 F.2d 268, 273–74 (8th Cir.1988) (citations omitted) (brackets in original)).

However, the Court of Appeals for this circuit has also held that the court, in ruling on the motion for summary judgment, must give the non-moving party "the benefit of all the reasonable inferences that can be drawn from the underlying facts." *Fischer v. NWA, Inc.,* 883 F.2d 594, 598–99 (8th Cir. 1989) (*citing, Trnka v. Elanco Products Co.,* 709 F.2d 1223, 1225 (8th Cir.1983)).

## B. Conflict of Laws

Gulf brings its motion for summary judgment on the basis that Arkansas has no statute providing for a direct cause of action against a liability insurance carrier when the insurer is a for-profit corporation. Thus, Gulf contends that plaintiff's direct action against Gulf is not a viable cause of action. Therefore, Gulf contends that it is entitled to judgment as a matter of law.

Plaintiff contends that she commenced this action against Gulf pursuant to Louisiana's direct action statute, La.Rev.Stat. Ann. § 22:655 (West 1995), and that such action is proper under Louisiana law. Therefore, the threshold question in this case is which state's laws apply to this cause of action. As this is a diversity case, Arkansas choice-of-law rules are applicable. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Under Arkansas law, the choice of law question is resolved by application of the five choice-influencing considerations developed by Dr. Robert A. Leflar. *See, Wallis v. Mrs. Smith's Pie Co.,* 261 Ark. 622, 628–29, 550 S.W.2d 453, 456 (1977). These considerations are: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Id. See also,* Robert A. Leflar, *et al., American Conflicts Law* (4th Ed.1986).

We first note that there is a conflict between the laws of Arkansas and Louisiana. Arkansas' direct action statute permits a direct cause of action against the liability insurer of a "cooperative non-profit corporation, association, or organization, or by any municipality, agency, or subdivision of a municipality, or of the state, or by any improvement district or school district, or by any other organization or association of any kind or character and not subject to suit for tort" for the negligent acts of its agents or em-

ployees. Ark.Code Ann. § 23–79–210(a)(1) (Repl.1992). It is undisputed that CTL is a for profit corporation, and thus, plaintiff could not bring this action against Gulf under the laws of the State of Arkansas.[3]

Louisiana's direct action statute, on the other hand, provides that:

> A. No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person, or his or her survivors, mentioned in Civil Code Art. 2315.1, or heirs against the insurer.
> B. (1) The injured person or his or her survivors or heirs mentioned in Subsection A, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Code of Civil Procedure Art. 42 only.
>
> \* \* \* \* \* \*

La.Rev.Stat. Ann. § 22:655 (West 1995). Therefore, it is clear that under Louisiana law, § 22:655, plaintiff can maintain a direct action against Gulf.

### C. Substantive v. Procedure

■ Gulf contends that the court does not have to engage in a choice-of-law analysis because the issue in this case is procedural in nature, and thus, this court should apply Arkansas law to the facts of this case. Gulf correctly states that a federal court, sitting in a diversity case, must apply the law of the forum in which it sits, regardless of the procedure that might be employed if the case were tried in the jurisdiction where the cause of action arose. *See, Erie Ry. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Arkansas conflict-of-laws rules would require application of Louisiana law only if the relevant Louisiana law would be characterized as "substantive," rather than "procedural." *Sentry Ins. Co. v. Stuart,* 246 Ark. 680, 439 S.W.2d 797 (1969). *See also, American Physicians Ins. Co. v. Hruska,* 244 Ark. 1176, 1185–86, 428 S.W.2d 622, 627–28 (1968). If the right to bring a direct action against an insurer would be characterized as "procedural," however, then an Arkansas state court would apply Arkansas law and dismiss the action. Thus, the court must determine whether Louisiana's direct action statute is substantive or procedural under Arkansas law.

■ In *Sentry Insurance Co.,* the court determined that the issue of what constitutes splitting the cause of action and its permissibility was a question of procedure, and thus, was governed by the law of the forum. *Id.,* 246 Ark. at 682, 439 S.W.2d at 798. The court cited Dr. Robert A. Leflar, in support of its holding, where he stated that:

> [t]here are a number of rules of law which are without much doubt treated as procedural. The question of what is the proper court in which to bring an action, for example, as between courts of law and equity, is always governed by the law of the forum. The same is true of the form of action to be brought, the sufficiency of pleadings, the effect of splitting the cause of action, and who are proper or necessary parties to the action.

*Id.,* 246 Ark. at 683, 439 S.W.2d at 798–99 (*quoting,* Dr. Robert A. Leflar, *The Law of Conflict of Laws,* § 61 at 110).

The Arkansas Supreme Court has also held that the items of, and rights to, costs are procedural and governed by the law of the forum. *American Physicians Ins. Co.,* 244 Ark. at 1185–86, 428 S.W.2d at 627–28. In addition, the court stated that the "entitle-

---

3. Under Arkansas law, if plaintiff obtains a judgment against CTL, then she may be able to pursue an action against Gulf. Ark.Code Ann. § 23–89–101(b) (Repl.1992).

ment to attorneys' fees on a suit brought in Arkansas on an insurance policy is a procedural matter and governed by Arkansas law." *Id.*, 244 Ark. at 1186, 428 S.W.2d at 628.

In contrast, however, the court held in *Schlemmer v. Fireman's Fund Insurance Co.*, 292 Ark. 344, 730 S.W.2d 217 (1987), that Arkansas' guest statute was substantive in nature, and thus, because Tennessee did not have a similar statute, the court engaged in a choice-of-law analysis, utilizing Dr. Leflar's five choice influencing considerations. In addition, the Arkansas Supreme Court held that a wrongful death statute is a law that creates a cause of action, and as such, is substantive as opposed to procedural. *Nelson v. Eckert*, 231 Ark. 348, 352, 329 S.W.2d 426, 429 (1959).

We conclude that Arkansas courts would determine, if given the opportunity, that Louisiana's direct action statute would be procedural in nature. The statute clearly does not create a cause of action, as the statute at issue in *Nelson* did, but it merely affords an injured plaintiff with an additional or alternative party to sue.

Other courts that have addressed this issue have also held that Louisiana's direct action statute is a matter of procedure. One of the more recent cases is *Ford v. State Farm Insurance Co.*, 625 So.2d 792 (Miss. 1993). In *Ford*, plaintiffs, Louisiana residents, were injured in an automobile accident in Louisiana. Plaintiffs sued State Farm Insurance Company in Mississippi pursuant to Louisiana's direct action statute. The circuit court dismissed the case on the basis that the Louisiana direct action statute did not apply to the case. The Mississippi Supreme Court affirmed and held that the Louisiana direct action statute was procedural and remedial in nature and therefore inapplicable in Mississippi. *See also, Pearson v. Globe Indem. Co.*, 311 F.2d 517, 518 (5th Cir.1962) ("Mississippi's law and policy are clear; the Louisiana Direct Action Statute does not operate extraterritorially in Mississippi.")

Texas has also held that Louisiana's direct action statute is procedural. In *Nelms v. State Farm Mutual Automobile Insurance Co.*, 463 F.2d 1190, 1192 (5th Cir.1972), the court held that "Texas courts and federal courts applying Texas law have uniformly concluded that direct actions against insurers are, under Louisiana law, 'procedural.'" In *Penny v. Powell*, 162 Tex. 497, 347 S.W.2d 601, 603 (1961), the court stated that "[i]n construing the Louisiana Direct Action Statute we are led to the conclusion that in so far as it provides for joinder of a liability or indemnity insurance company with the insureds in tort cases the statute is procedural rather than substantive."

While the courts of one state are not bound by the construction placed on the statutes of another state by its courts, it is always helpful to look at the decisions of that state in construing one of its statutes. The Louisiana cases on point are not in complete accord that the direct action statute is procedural, however, we believe that the majority of the Louisiana cases have held that the direct action statute is, in fact, procedural in nature.

In *Finn v. Employers' Liability Assurance Corp.*, 141 So.2d 852, 864 (La.Ct.App. 1962), the Louisiana Court of Appeals stated that the direct action statute did not create a separate or distinct cause of action, but was instead "remedial in character, rather than substantive." The court cited *Mock v. Maryland Cas. Co.*, 6 So.2d 199 (La.App.1942), where the nature of the direct action statute was explained:

[t]he statute merely affords remedy and permits a direct action not under any theory that by the contract of insurance any right is created in plaintiff against the insurer but merely on the ground that, by the tort, rights are created which are permitted to be asserted directly against the insurer of the party at fault. But this is in no sense a suit in contract and it has often been held that even where the Act of 1930 [§ 22:655] is involved, nevertheless the cause of action against the insurer is essentially one in tort.

*Finn*, 141 So.2d at 864 (other citations omitted). In addition, in *Home Insurance Co. v. Highway Insurance Underwriters*, 222 La. 540, 62 So.2d 828, 831 (1953), the court stated that the direct action statute was remedial in nature and was meant to "better insure re-

covery for an injured person, or a person suffering property damage." *See also, Burke v. Massachusetts Bonding & Ins. Co.,* 209 La. 495, 24 So.2d 875, 877 (1946) (Louisiana's direct action statute is "procedural and not substantive.")

The Supreme Court of Missouri, in *Noe v. United States Fidelity and Guaranty Co.,* 406 S.W.2d 666 (Mo.1966), examined this issue thoroughly and determined that the only Louisiana case that may have expressed a contrary view was *West v. Monroe Bakery,* 217 La. 189, 46 So.2d 122 (1950). The court in *West* referred to Louisiana's direct action statute as conferring "substantive rights" on third parties to contracts of public liability insurance, however, as the court in *Penny, supra,* recognized, "the case did not involve a conflict of laws issue." *Noe,* 406 S.W.2d at 670 (internal quotation marks omitted). Moreover, in the most recent decision by the Supreme Court of Louisiana, the court stated that "[i]t is well settled that the statute is remedial. . . ." *Grubbs v. Gulf Int'l Marine, Inc.,* 625 So.2d 495, 498 (La.1993).

In contrast to the above cases, other courts have held that Louisiana's direct action statute is substantive in nature. For example, in *Roberts v. Home Insurance Indemnity Co.,* 48 Cal.App.3d 313, 121 Cal.Rptr. 862, 866 (1975), the court stated that under California law, "[a]n important consideration in determining whether the law of another jurisdiction should be applied by California courts is whether such an application is reasonably to be expected by litigants." The court determined that a "substantive characterization" of the direct action statute was consistent with the insurer's reasonable expectations. *Id.*

The courts in New York have also held that Louisiana's direct action statute is substantive. Specifically, in *Rosenberg v. El San Juan Hotel Corp.,* 53 Misc.2d 458, 278 N.Y.S.2d 1007, 1009 (N.Y. City Civ.Ct.1967), the court held that the statute "transcends mere procedure." *Id. See also, Oltarsh v. Aetna Ins. Co.,* 15 N.Y.2d 111, 256 N.Y.S.2d 577, 204 N.E.2d 622 (1965).

Gulf urges this court to follow the line of cases that hold that Louisiana's direct action statute is procedural in nature, and is not applicable to this case. Gulf contends that the direct action statute does not create a separate and distinct cause of action against a liability insurer, but instead provides "a separate remedy available only in Louisiana to enforce a cause of action against an insurer which arose by reason of tortious conduct of an insured." *Brief in Support of Motion for Summary Judgment,* at 21. We agree. Louisiana's direct action statute is procedural in nature, and as such, this court is not required to apply it to this case. Therefore, because Arkansas' direct action statute does not permit plaintiff to bring a direct action against Gulf, the court finds that Gulf is entitled to judgment as a matter of law.

### III. CONCLUSION

For the reasons stated above, the motion for summary judgment will be granted. A separate order in accordance herewith will be concurrently entered.